**UNITED STATED DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**DOROTHY McCARTHY,**

                 **PLAINTIFF,**               **CASE NO.**

    **-against-**

                                          **COMPLAINT**
**MOTOROLA SOLUTIONS INC.;**
**and, JOSHUA THOMPSON;**

                                            **JURY TRIAL DEMANDED**

                 **DEFENDANTS.**
-----------------------------------------------------------X

        The Plaintiff, Dorothy McCarthy ("McCarthy"), through undersigned counsel, complains about the Defendants, Motorola Solutions Inc. ("Motorola") and Joshua Thompson ("Thompson") (collectively "Defendants"), as follows:

## INTRODUCTION

        1.    This is an employment discrimination case involving age-based hostile work environment, disparate treatment, retaliation claims, and constructive discharge claims in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"); and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York ("NYCHRL"), as amended.

## JURISDICTION AND VENUE

        2.    The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

        3.    The Court has jurisdiction over Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367. Plaintiff's NYCHRL claims are so closely related to Plaintiff's claims brought under the ADEA that they form part of the same case or controversy as those terms are defined pursuant to Article III of the United States Constitution.

        4.    The Defendants are subject to personal jurisdiction in New York.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), and Title VII's special venue provision, 42 U.S.C. § 2000e-5(f)(3), because the events or omissions giving rise to the claims occurred within this judicial district.

## THE PLAINTIFF

6. Plaintiff Dorothy McCarthy is a resident of New York State.

7. McCarthy is currently seventy-four (74) years old.

8. McCarthy worked as a Project Manager for Motorola from November 2018 until her constructive discharge in June 2020.

## THE DEFENDANTS

9. Defendant Motorola is a Delaware corporation with offices throughout the United States, including in Brooklyn, New York, where Plaintiff worked.

10. Motorola is a "single source provider of technological services" to private business as well as federal, state, and local governments.

11. Defendant Thompson is, and was at all relevant times, employed by Motorola as a supervisory employee, and was Plaintiff's supervisor from November 2018 to March 2020.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. On July 28, 2020 Plaintiff filled online a *pro se* Charge of Discrimination, alleging that she had been subjected to illegal discrimination because of her age, with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 520-2020-04638.

13. After Plaintiff filed her initial Charge of Discrimination online, she was sent an e-mail for an interview with an EEOC investigator, which was supposed to take place in November 2020.

14. In November 2020, Plaintiff missed an e-mail sent to her by the EEOC confirming the November 2020 interview by telephone, which she subsequently did not attend.

15. Thereafter, Plaintiff, with the assistance of undersigned counsel, attempted to file a detailed Charge of Discrimination to supplement the online form she originally submitted.

2

16. Upon information and belief, the EEOC investigator who Plaintiff's counsel sent a copy of the detailed Charge of Discrimination and a Notice of Appearance, never placed this information into Plaintiff's EEOC file and Plaintiff's original Charge of Discrimination was dismissed.

17. Plaintiff subsequently filed a second Charge of Discrimination on March 12, 2021, which was assigned Charge No. 520-2021-02177.

18. The EEOC issued a Right-To-Sue letter to Plaintiff on or about April 22, 2021.

19. This action commenced within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue Letter issued by the EEOC.

## FACTS RELEVANT TO ALL CLAIMS

20. From November 2018 to October 2019, Plaintiff worked as a Project Manager for Motorola Solutions but was paid by a third party, Pinnacle Solutions Inc.

21. In light of her excellent work performance, in or about October 2019, Defendant Thompson asked McCarthy if she would like to continue her role as a Project Manager, but as a full-time Motorola employee paid by Motorola, and Plaintiff agreed.

22. McCarthy's word duties, work location and the supervisors she reported to remained the same after she agreed to be paid directly by Motorola in or about October 2019.

23. During her "onboarding" process as a Motorola employee, Plaintiff received an e-mail from the Motorola Human Resources Department, which instructed her to provide identification to her direct supervisor, Defendant Thompson, for verification:

> -----Original Message-----
> From: Caroline Clarke <caroline.clarke@motorolasolutions.com>
> To: Dorothy McCarthy <dmcc626@aol.com>
> Sent: Mon, Oct 28, 2019 12:25 pm
> Subject: Re: Motorola Day 1 Information
>
> Hi Dorothy -
>
> Thanks for the update! For your I-9, you will need to present your documentation to your manager and work with him to complete Section 2. Once that is filled out you will need to send the completed form and copies of your documentation to me. For Workday, your login credentials are your Core ID and one IT password. If IT is still in the process of merging your Core ID's, you will need to wait until that process is complete before you can access Workday with your updated credentials.
>
> Thanks,
> Caroline

3

24. After Plaintiff provided Defendant Thompson with her passport, which contained her date of birth, he began to subject McCarthy to harassing conduct.

25. For example, a few weeks later, on or about November 18, 2019, Thompson informed Plaintiff that from that point on, she would have to perform special projects in order to "stay" at Motorola as an employee.

26. Upon information and belief, other new Project Managers who were hired at the same time as Plaintiff, but who were younger than she is, did not have to perform additional tasks that allegedly tested their competency to remain Motorola employees.

27. Thompson made clear to McCarthy that if she failed any extra tests, she would be fired.

28. In or about November 18, 2019 to December 16, 2019, McCarthy was assigned to complete final documentation for the "2D project."

29. McCarthy completed the "2D project" on time, and the New York City Department of Information Technology ("NYC DoITT"), which was the client on that project, signed off on her work.

30. However, Diana Galeggo ("Galeggo"), who at all relevant times was Defendant Thompson's assistant, pulled the certification with Plaintiff's name on it, and put her own name on it, seemingly in an effort to take credit for McCarthy's work.

31. Upon information and belief, Galeggo replaced Plaintiff's name with her own on the "2D project" certification at Defendant Thompson's direction in an attempt to erase McCarthy's contributions to that project so that she could be fired.

32. Plaintiff called Defendant Thompson to make him aware of this situation, and in response, he said McCarthy would not be fired because of Galeggo's attempt to undermine her and take credit for her work.

33. Despite the fact that McCarthy reported Galeggo's harassment to Defendant Thompson, he did nothing to remediate the situation and Galeggo's harassment of Plaintiff continued.

34. For example, in December 2019, Galeggo asked Dave Chambers ("Chambers"), to whom Plaintiff also had a reporting relationship, if she could "borrow" McCarthy for three (3) days to be on-site at the Sea View Hospital fiber installation in Staten Island, N.Y.

35. Chambers agreed to this request.

36. When McCarthy went with Galeggo to Sea View Hospital, she told Plaintiff not to talk to the customer, NYC DoITT, or any of the contractors present, and that any questions that arose should be passed to Galeggo.

37. About three days later, Plaintiff overheard Galeggo call Defendant Thompson to falsely inform him that McCarthy did not know what she was doing.

38. Numerous employees were witness to Galeggo's mistreatment of Plaintiff, including John Murray and Tucker Wildenuth, who at all relevant times were Motorola employees.

39. McCarthy's colleagues told Plaintiff how awful they felt for her because she had to deal with this kind of mistreatment on the job.

40. However, Motorola's office culture was so intimidating that McCarthy's colleagues would not volunteer to provide support for her later discrimination complaint to the Human Resources Department because they told her they feared losing their jobs.

41. From on or about December 18, 2019 to on or about January 7, 2020, Plaintiff worked with Pyramid Electrical Contractors, and the DoITT, on-site at the Sea View Hospital Project.

42. By January 2020, the fiber installation at the Sea View Hospital Project was completed successfully, it was tested, and continuity was one hundred (100) percent.

43. Henry Lucasik, the Director of DoITT was very pleased and told Plaintiff the work for the Sea View Hospital project was excellent.

44. Chambers, to whom Plaintiff had a reporting relationship at Motorola, sent her a "High Five" award e-mail for completing the Sea View Hospital project three (3) weeks early and on budget.

5

45. Throughout her work on the Sea View Hospital project, Plaintiff also kept Defendant Thompson updated on her progress with daily e-mails, and a weekly report.

46. During the months of January and February 2020, Defendant Thompson and Plaintiff met weekly to discuss her work progress.

47. During one weekly meeting, Thompson asked McCarthy if she thought the Sea View Hospital project was successful.

48. When Plaintiff responded, "Yes," Defendant Thompson lied and said the project was late and over budget.

49. When McCarthy disagreed, Thompson told her that she was incompetent, over paid, and "d[id] not fit in" at Motorola.

50. However, aside from Defendant Thompson and his assistant, Galeggo, no one else at Motorola provided McCarthy with any negative feedback about her work performance.

51. For example, Chambers, with whom Plaintiff worked on many projects at Motorola, did not express any concerns with McCarthy about her work performance.

52. Throughout her tenure working for Motorola in Brooklyn, Chambers afforded McCarthy special training and put her to work on many new projects, including an NYC Office of Emergency Management project, and a project for NYC Department of Parks.

53. During this time period, Plaintiff tried to engage Defendant Thompson in constructive dialogue because she did not want to give up on having a good working relationship with him, like the relationship she had with Chambers, and she did not want to leave her job at Motorola.

54. But that did not happen. Every time Plaintiff came together with Defendant Thompson for their weekly meetings, he would berate McCarthy by telling her over and over again that she was overpaid, incompetent, and that he was going to fire or demote her.

55. Thompson laughed when he harassed McCarthy in this manner, which made Plaintiff very upset and scared she would soon lose her job.

56. In or about February 2020, Plaintiff informed a Motorola contractor, David Ruiz ("Ruiz"), about Thompson and Galeggo harassing her.

57. Ruiz, who had worked as a Motorola supervisor for many years before he worked as a contractor, advised McCarthy to file a complaint with Motorola's Human Resources Department.

58. In or about February 2020, Plaintiff reached out to Motorola's Human Resources Department about Defendant Thompson and Galeggo's discriminatory harassment and met with several people to discuss her complaint as this invitation demonstrates:

From: **Jessica Roby** <jessica.roby@motorolasolutions.com>
Date: Thu, Feb 6, 2020 at 4:37 PM
Subject: Invitation: Discussion @ Wed Feb 12, 2020 3pm - 4pm (EST) (dorothy.mccarthy@motorolasolutions.com)
To: <dorothy.mccarthy@motorolasolutions.com>, <kimberly.marks@motorolasolutions.com>

**You have been invited to the following event.**

**Discussion**
When        Wed Feb 12, 2020 3pm – 4pm Eastern Time - New York
Joining info   meet.google.com/kyw-ffok-kbt
             Or dial: +1 218-301-2653  PIN: 147472#  More phone numbers
Calendar    dorothy.mccarthy@motorolasolutions.com
Who         • jessica.roby@motorolasolutions.com - organizer
            • kimberly.marks@motorolasolutions.com
            • dorothy.mccarthy@motorolasolutions.com

59. During the conference call with Human Resources, which lasted two (2) hours, Motorola Human Resources manager, Kim Marks ("Marks"), told McCarthy that she should meet with Miraj Oza ("Oza"), who is the Regional Director for the New York-area market.

60. A short while later, Plaintiff met with Oza and Marks.

61. During that meeting, Plaintiff described how she was being harassed by Defendant Thompson and Galeggo, and attributed this mistreatment to age bias.

62. Although Plaintiff complained to Motorola's Human Resources Department and Oza, who directly supervised Defendant Thompson, no remedial actions were taken and Defendant Thompson and Galeggo continued to subject McCarthy to discriminatory mistreatment.

7

63. Upon information and belief, Defendant Thompson and Galeggo were informed that McCarthy complained about their discriminatory treatment, because after she met with Oza and Marks from Human Resources, the harassment that Thompson and Galeggo subjected Plaintiff to intensified.

64. For example, one day in the Brooklyn office, Plaintiff overheard Defendant Thompson and Galeggo laughing after Galeggo said, "If I don't behave myself, I will get fired!"

65. The next day, Plaintiff witnessed Defendant Thompson and Galeggo laughing again and she overheard Galeggo say to Thompson: "Are you still my boss, are you still my boss?" and Thompson responded: "Yes, and I can write an agenda!"

66. Then, Defendant Thompson and Galeggo walked out of Thompson's office, which was in very close proximity to McCarthy's desk, and laughed again right in front of her, which suggested to Plaintiff that she and her complaints were viewed as joke to them.

67. Several weeks later, Marks e-mailed Plaintiff about an alleged investigation into McCarthy's discrimination complaint, which uncovered "inappropriate actions" taken against her:

> On Fri, Feb 21, 2020 at 6:29 PM Kim Marks <kimberly.marks@motorolasolutions.com> wrote:
> Hi Dorothy,
>
> Thank you for bringing these issues to our attention. We have completed our investigation into this issue. We were unable to substantiate the claims of a hostile and discriminatory work environment based on age.
>
> Based on feedback as part of the investigation, we determined there were inappropriate actions taking place in the Brooklyn, NY office and we are taking action.
>
> In your email to Miraj Oza you indicated that you were open to working in the VA/MD area and as discussed earlier today we are going to rotate you to that team. Elaine Durovey will work to figure out which projects you will work with and will let you know who on her team you will report to. You can begin this new role on Monday Feb 24. Our HR systems will reflect this change effective 3/1. We are currently in a system freeze.
>
> Again, we appreciate you bringing this to our attention and want to remind you that Motorola has zero tolerance for any sort of retaliation and ask that you let us know immediately if any sort of retaliation occurs.
>
> Thanks,
>
> Kim
>
> **Kim Marks, SPHR**
>
> *HR Business Partner* | **Motorola Solutions Inc**
>
> kimberly.marks@motorolasolutions.com | **M: 630.926.1163**

68. Although Marks noted in her e-mail that McCarthy told Oza she was open to a transfer to the Maryland office, Plaintiff never agreed to a permanent relocation.

69. McCarthy wanted to get away from Defendant Thompson and Galeggo at the Brooklyn office, and would have been happy to remain at Motorola's Long Island City office where she worked for several weeks after she complained to Human Resources.

70. However, Oza never offered to McCarthy a position at the Long Island Office.

71. Ruiz, the Motorola contractor, told McCarthy that if she did not agree to transfer out of the New York area, Defendant Thompson would have her employment with Motorola terminated.

72. Before she left the New York area, Marks, from Motorola's Human Resources Department, informed Plaintiff that if Galeggo called to apologize for her misconduct, McCarthy should make Marks aware of it, but that never happened.

73. Marks also informed McCarthy that while her transfer was permanent, she was deemed to be a "remote" New York employee.

74. In or about the same time McCarthy was subject to the retaliatory transfer to Maryland, Oza promoted Defendant Thompson.

75. McCarthy reported to Motorola's office in Maryland in or about early March 2020.

76. In Maryland, McCarthy reported directly to Senior Project Manager, Andrew Piwetz ("Piwetz").

77. Piwetz reported to Motorola manager, Deborah Edwards ("Edwards").

78. Edwards reported to Elaine Durovey ("Durovey"), whose title at Motorola at all relevant times has been Large Project Sales Manager.

79. For the first thirty (30) days, Plaintiff enjoyed working for Motorola in Maryland.

80. During that time, McCarthy worked on several projects such as drafting Scope of Work documents and accompanying Piwetz to different work sites to survey equipment,

81. Plaintiff also did some work on the "State of Maryland project," which was managed by Edwards.

82. In or about mid-April 2020, Plaintiff received an email from Motorola Human Resources regarding a Voluntary Separation Package ("VSP") that was being offered to employees who had worked at the company for many years.

83. Since Plaintiff had only been an employee paid directly by Motorola for less than one year, she paid no attention to the e-mail about the VSP.

84. A short time later, McCarthy received a phone call from Edwards who told Plaintiff that two people in the Maryland office were qualified for the VSP, one of whom was Piwetz.

85. Edwards then asked Plaintiff if she was over sixty-one (61) years of age.

86. McCarthy thought it was unusual that she had to reveal her age but nevertheless responded by saying, "Yes" to Edwards, who then told her: "Well you should take the package!"

87. Plaintiff told Edwards that she had not been an employee paid directly by Motorola for more than one year.

88. Edwards ignored McCarthy's comment and continued to encourage her to take the VSP, saying that fourteen (14) weeks of pay would be a very good deal.

89. When McCarthy said, again, that she was not interested in the VSP, Edwards told Plaintiff that she really needed to consider it because it was a good package.

90. Plaintiff could not imagine why Edwards wanted her to take the VSP and leave Motorola just weeks after she arrived to work in Maryland.

91. Edwards continued to insist that McCarthy take the VSP, which made Plaintiff very uncomfortable.

92. In an effort to get Edwards to stop raising the issue, McCarthy sent an e-mail to Durovey to make clear that she would not take the VSP and leave Motorola and she cc'd Edwards to that e-mail.

93. After Plaintiff opposed Edwards' efforts to make her take the VSP and retire, Motorola subjected McCarthy to illegal mistreatment that made Plaintiff's job so difficult she was forced to leave.

94. Prior to rejecting the VSP, Edwards and Piwetz told McCarthy that her primary duty for the foreseeable future would be the completion of a Final Documentation Report for the State of Maryland Project, which had been a ten (10) year project and the documentation was enormous.

95. Edwards and Piwetz informed Plaintiff that the State of Maryland Report would require all of her time and likely take one (1) year to complete.

96. Since Motorola's Maryland office location was closing, and the COVID-19 pandemic was raging, Plaintiff worked on the State of Maryland Report from her home in Virginia most of the time, although she traveled to Maryland at least once a week for meetings and to tend to issues that had to be dealt with in person.

97. However, in or about May 2020, a few weeks after their exchanges about the VSP, Edwards informed Plaintiff that in addition to working on the State of Maryland Report, she would be taking over the work of three (3) contractors who were allegedly departing Motorola: a contract modifications contractor, who was working twenty (20) hours a week; an asset tracking contractor, was working twenty (20) hours a week; and, an administrative assistant was working forty (40) hours a week.

98. McCarthy was expected to perform the work of the three departing contractors at a third-party warehouse in Maryland that was dirty and did not have air-conditioning despite outside temperatures regularly reaching into the eighties and nineties throughout May and June 2020.

99. In addition to these difficult work conditions, Motorola required McCarthy to do extremely physically demanding work, which she had never done working for Motorola in Brooklyn.

11

100. For example, as the asset tracker, Plaintiff was expected to open two hundred (200) boxes of equipment, with each piece of equipment weighing thirty (30) pounds, and lift each piece out of the original box, tag it, and repackage it.

101. Motorola required Plaintiff to repackage the two hundred boxes by the end of June 2020, while performing Plaintiff's myriad other duties.

102. McCarthy began working twelve (12) hours per day or more to keep up with all of the additional work assigned to her by Motorola and quickly became overwhelmed.

103. No other Motorola employee in Maryland was expected to work the hours expected of McCarthy and her new work schedule quickly proved to be unsustainable.

104. Indeed, Piwetz and Plaintiff's other colleagues told McCarthy that the amount of work Motorola expected her to do was "impossible " for any one person to perform.

105. Plaintiff complained to Edwards about her duties, work conditions and hours.

106. Edwards responded to Plaintiff that in light of her pay, she should be able to handle the additional work assignments.

107. Edwards also falsely claimed to McCarthy that, eventually, the hours would get better and that she could use third-party warehouse workers to help her, but none of these things panned out and became true as Edwards said they would.

108. On June 26, 2020, Plaintiff could no longer endure the long hours and working conditions, and resigned from her job with Motorola.

109. Before she resigned, McCarthy wrote a long, detailed e-mail to Oza in which she complained about her working conditions at Motorola in Maryland.

110. Upon information and belief, Oza did nothing in response to McCarthy's complaint.

111. After she resigned, McCarthy learned from her co-workers at Motorola that Edwards brought back several contractors, as well as a warehouse manager and several support staff, to complete the work that had previously been assigned only to Plaintiff.

12

112. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional damages, humiliation, insult to dignity, and other compensable damages as a result of Defendants' illegal practices as described herein unless and until the Court grants relief.

## COUNT I

### AGE DISCRIMINATION IN VIOLATION OF ADEA AGAINST MOTOROLA

113. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

114. At all relevant times to this action, Motorola employed Plaintiff within the meaning of the ADEA.

115. Plaintiff's ADEA disparate treatment claim relates to the disparate treatment McCarthy was subjected to by Motorola because of on her age after her mandatory transfer to Maryland in March 2020, which includes but is not limited to being repeatedly pressured to retire, and, being subject to a de facto demotion from project manager to warehouse staffer where she was required to do the work of several people, which was extremely physically taxing, and required her to tolerate extremely hot and dirty conditions and twelve (12)-hour work days.

116. Motorola acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

117. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional damages, humiliation, insult to dignity, and other compensable damages as a result of Motorola's discriminatory practices.

## COUNT II

### RETALIATION IN VIOLATION OF ADEA AGAINST MOTOROLA

118. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

119. At all relevant times to this action, Motorola employed Plaintiff within the meaning of the ADEA.

120. Plaintiff's ADEA retaliation claim relates to the illegal retaliatory treatment that McCarthy was subjected to by Motorola after she repeatedly opposed Edwards' discriminatory efforts to make her accept the VSP retirement package and leave Motorola, which include but is not limited to being subject to a de facto demotion from project manager to warehouse staffer where she was required to do the work of several people, which was extremely physically taxing, and required her to work in hot, dirty conditions and endure twelve-hour work days, and this retaliatory mistreatment, which created working conditions that were so intolerable, Plaintiff was forced to quit and she was constructively discharged for her job with Motorola in June 2020.

121. Motorola acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

122. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional damages, humiliation, insult to dignity, and other compensable damages as a result of Motorola's discriminatory practices.

## COUNT III

## AGE DISCRIMINATION IN VIOLATION OF NYCHRL AGAINST ALL DEFENDANTS

123. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

124. At all relevant times to this action, Defendants Motorola and Thompson employed Plaintiff within the meaning of the NYCHRL.

125. Plaintiff's age discrimination claim against Defendants Motorola and Thompson under the NYCHRL covers the illegal discriminatory conduct that McCarthy was subjected to during her tenure working for Defendants in Motorola's Brooklyn office from November 2019 to March 2020, until Motorola required Plaintiff to transfer to Maryland.

126. Defendants Motorola and Thompson intentionally discriminated against Plaintiff because of her age by subjecting her to discriminatory mistreatment that rose above the level above

14

petty slights and trivial inconveniences, thereby treating Plaintiff less well because of her age. Accordingly, Defendants have discriminated against Plaintiff on the basis of age in violation of the NYCHRL.

127. As Plaintiff's supervisor, Defendant Thompson is personally liable for his own illegal discriminatory conduct, and the aiding and abetting of Motorola's discriminatory treatment of Plaintiff, pursuant to N.Y.C. Admin. Code § 8-107.

128. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional damages, humiliation, insult due to Defendants' discriminatory practices.

## COUNT IV

## RETALIATION IN VIOLATION OF NYCHRL AGAINST ALL DEFENDANTS

129. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

130. At all relevant times to this action, Defendants Motorola and Thompson employed Plaintiff within the meaning of the NYCHRL.

131. Plaintiff's age retaliation claim against Defendants Motorola and Thompson under the NYCHRL covers the illegal retaliatory conduct that McCarthy was subjected to after she complained about Defendant Thompson's discriminatory mistreatment motivated by age bias, which resulted in Plaintiff's mandatory transfer to Maryland where she was subjected to more illegal misconduct.

132. As Plaintiff's supervisor, Defendant Thompson is personally liable for his own illegal retaliatory conduct, and the aiding and abetting of Motorola's retaliatory treatment of Plaintiff, pursuant to N.Y.C. Admin. Code § 8-107.

133. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional damages, humiliation, insult due to Defendants' discriminatory practices.

## JURY DEMAND

134. Plaintiff demands a trial on all issues triable by a jury.

WHEREFORE, Plaintiff respectfully requests that this Court grant her injunctive relief to enjoin and permanently restrain Defendants for violating her civil rights under the ADEA and NYCHRL; declare that the acts and practices complained of herein are in violation of the ADEA and NYCHRL; render a judgment sufficient to compensate her for economic, emotional and psychic injuries, humiliation, suffering, insult to dignity, and to provide necessary treatment; and to punish Defendants for their violation of law and deter similar violations in the future; grant Plaintiff such interest as is permitted by law; attorneys' fees and all other costs associated with bringing this action against Defendants; and, all such additional relief as this Court may deem just and appropriate under the circumstances.

Dated: July 16, 2021

          Respectfully submitted,

          LAW OFFICE OF DANIELA NANAU P.C.

          _____
          By: Daniela Nanau
          89-03 Rutledge Avenue
          Glendale, New York  11385
          Telephone: (888) 404-4975
          Facsimile: (718) 998-6916
          E-Mail: dn@danielananau.com

          ATTORNEYS FOR PLAINTIFF