# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 21-CV-4020 (RER) (MMH)

---

DOROTHY MCCARTHY

VERSUS

MOTOROLA SOLUTIONS INC. & JOSHUA THOMPSON

---

**MEMORANDUM & ORDER**

---

**RAMÓN E. REYES, JR., District Judge:**

Dorothy McCarthy worked for Motorola Solutions, Inc., first as a contractor and then as an employee, for close to two years—nineteen months to be exact. McCarthy worked in Motorola's New York office for about fifteen of those months. She alleges that during that time, her direct supervisor, Joshua Thompson, discriminated against her because of her age and that Motorola then retaliated against her after she reported Thompson's actions. McCarthy therefore brought this action against Motorola Solutions Inc. and Joshua Thompson, alleging age discrimination and retaliation under the Age Discrimination in Employment Act and the New York City Human Rights Law.

On August 28, 2024, the Court granted Motorola's motion for summary judgment on McCarthy's Age Discrimination in Employment Act claims and declined to exercise supplemental jurisdiction over her New York City Human Rights Law claims. Subsequently, and at the parties' request, the Court reconsidered its decision to decline to exercise supplemental jurisdiction over McCarthy's New York City Human Rights Law claims as McCarthy had since become a resident of Alabama, thereby establishing

diversity jurisdiction over such claims. (Order dated 04/04/2025). The parties also asked the Court to address Defendants' summary judgment motion as to McCarthy's New York City Human Rights Law claims. Now, after carefully reviewing the record and for the reasons stated below, Defendants' motion for summary judgment on McCarthy's New York City Human Rights Law claims is **GRANTED**.

## BACKGROUND

The Court refers the parties to its August 28, 2024, Memorandum and Order, (ECF No. 59), for the recitation of facts and procedural history of this action. The Court will apply the relevant facts to Dorothy McCarthy's ("Plaintiff") New York City Human Rights Law claims.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, "the court cannot try issues of fact but can only determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 15–16 (2d Cir. 1995) (emphasis and quotation omitted). The moving party bears the burden of establishing that no material fact is in dispute, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Stern v. Trustees*

*of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). A genuine dispute as to material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," and in that case, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CLP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotation omitted); *see also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To survive a summary judgment motion, a nonmovant "need[s] to create more than a metaphysical possibility that his allegations were correct; he need[s] to come forward with specific facts showing that there is a genuine issue for trial." *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). "[T]he mere existence of some alleged factual dispute between the parties" does not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48. Instead, an opposing party must set forth "concrete particulars" to show that a trial is necessary. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quotations omitted). "[W]hile summary judgment must be granted with caution in employment discrimination actions . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Osinoff v. Nuvance Health*, No. 22 Civ. 2017 (KMK), 2024 WL 967190, at *6 (S.D.N.Y. Mar. 5, 2024) (quotation omitted).

## **DISCUSSION**

The New York City Council enacted the New York City Human Rights Law ("NYCHRL") in 1965 to eradicate the scourge of discrimination committed because of race, sex, age, and national origin in housing, employment, and public accommodations. N.Y. Local Law No. 97 (Dec. 13, 1965); *see also* Kaur & Sussman, Unlocking the Power and Possibility of Local Enforcement of Human and Civil Rights: Lessons Learned from the NYC Commission on Human Rights, 51 Columbia Human Rights L. Rev. 582, 595–96 (2022) (citing Marta B. Varela, The First Forty Years of the Commission on Human Rights, 23 Fordham Urb. L.J. 983, 985 (1996)); *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 4, 108 S.Ct. 2225, 2229 (1988) (noting that the NYCHRL was passed in 1965 to prohibit discrimination in public accommodations). The City Council has since amended the law many times to expand the number of classes it protects, *see* Michael H. Schill, Local Enforcement of Laws Prohibiting Discrimination in Housing: The New York City Human Rights Commission, 23 Fordham Urb. L.J. 991, 1010–11 (1996), and to expand the reach of the law beyond that of its federal and state counterparts. *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) and *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011)) (citations omitted). Most relevant here, the City Council twice—in 1991 and 2005—clarified that the NYCHRL must be analyzed separately and independently from federal civil rights laws and New York State's Human Rights Law. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 120, 109 (2d Cir. 2013); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66–68 (1st Dep't 2009); *see also*

Craig Gurian, *A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law*, 33 Fordham Urb. L.J. 255, 255–58 (2006).

The City Council made the latter clarification because courts were construing the NYCHRL as being "coextensive with its federal and state counterparts." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015). Indeed, the City Council characterized such interpretations as being "too narrow[] to ensure [the] protection of the civil rights of all persons covered by the law." *Williams*, 61 A.D.3d at 66. After the 2005 Restoration Act amendments, however, courts now interpret the federal and state counterparts "as a floor below which the NYCHRL cannot fall." *Ya-Chen Chen*, 805 F.3d at 75 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

Courts must therefore interpret the NYCHRL separately and independently from similar civil rights laws and "construe its provisions [liberally] and broadly in favor of discrimination plaintiffs" to accomplish its "uniquely broad and remedial purposes." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011); *see also Nelson v. HSBC Bank, USA*, 87 A.D.3d 995, 997 (2d Dep't 2011); *Mihalik*, 715 F.3d at 109. This interpretation must be applied "*in all circumstances*." *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 34 (1st Dep't 2011) (emphasis in original). At bottom, "the text and legislative history represent a desire that the NYCHRL meld the broadest vision of social justice with the strongest law enforcement deterrent." *Williams*, 61 A.D.3d at 68 (internal quotation marks omitted).

The NYCHRL, however, is not without limit. It is not a "general civility code" and "does not apply to conduct that a reasonable victim would consider petty slights and trivial

inconveniences." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 579 (S.D.N.Y. 2023) (quoting *Williams*, 61 A.D.3d at 69, 76) (internal quotation marks omitted); *Ruiz v. Armstrong*, 85 Misc.3d 237, 252–53 (N.Y. Sup. Ct. Kings Cty. 2024) (quoting *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 309 (2004)). A plaintiff must also do more than show that she has an "overbearing or obnoxious boss." *Mihalik*, 715 F.3d 102, 110. The plaintiff must show that she was treated less well "at least in part" because of her protected characteristic—here, Plaintiff's age. *Id*. (citing *Williams*, 872 N.Y.S.2d at 39, 40 n. 27.

### Discrimination

The New York City Council, through the NYCHRL, prohibits employers from terminating or discriminating against an employee "in compensation or in terms, conditions or privileges of employment because of a protected status such as age. N.Y.C. Admin. Code § 8–107(1)(a)(2), (3). To effectuate the purpose of the NYCHRL, courts apply the *McDonnell Douglas* framework with a mixed motive standard to discrimination claims. *Bilitch v. New York City Health & Hosps Corp.*, 194 A.D.3d 999, 1002 (2d Dep't 2021); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 113 (1st Dep't 2012) (citing *Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 41, 936 N.Y.S.2d 112 (1st Dep't 2011)); *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) ("summary judgment is appropriate if 'the record establishes as a matter of law' that discrimination *or* retaliation 'played no role' in the defendant's actions.") (quoting *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) and citing *Williams*, 61 A.D.3d at 78 n. 27). The *McDonnell Douglas* framework is a three-part burden-shifting test where the plaintiff must first make a prima facie case of employment discrimination.

6

To do so, the plaintiff must show (1) that she was in a protected class, (2) that she was qualified for the position, (3) that she experienced an adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination. *Hanley v. New York City Health and Hosps. Corp.*, 722 F. Supp. 3d 112, 120 (E.D.N.Y. 2024) (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021)); *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 456 (S.D.N.Y. 2023) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020)). Under the NYCHRL's more liberal standard, a plaintiff must only show differential treatment, meaning "that she was treated less well because of a discriminatory intent." *Forrester v. Corizon Health, Inc.*, 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017) (quoting *Mihalik*, 715 F.3d at 110). She need not prove either that the adverse employment action was material or that the conduct was severe and pervasive. *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 192 (E.D.N.Y. 2021) (citing *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014)). "[T]he conduct's severity and pervasiveness are relevant only to the issue of damages." *Mihalik*, 715 F.3d at 110 (citing *Williams*, 872 N.Y.S.2d at 38). At this step, the plaintiff's burden is minimal. *Hanley*, 722 F. Supp. 3d at 120 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)) (citations omitted).

If the plaintiff establishes a prima facie case, then the burden shifts to the employer to provide a nondiscriminatory reason for the adverse employment action. *Hanley*, 722 F. Supp. 3d at 120 (quoting *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)); *Adams*, 662 F. Supp. 3d at 456 (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). If the employer meets its burden, then the burden shifts a final time

back to the plaintiff to show that the employer's explanation was a pretext for discrimination. Unlike in the Age Discrimination in Employment Act context, the plaintiff does not need to show that age was a "but-for" cause of the adverse employment action. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("*Gross* makes clear that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action and not just a contributing factor.") (quoting *Gross v. FBL Fin. Svs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 2352 (2009)). A plaintiff may, instead, show that age discrimination was a motivating factor. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 07, 123 (2d Cir. 2004); *Melman*, 98 A.D.3d at 127 ("Recognizing the mandate of the [Local Civil Rights Restoration Act] to construe the NYCHRL as liberally as reasonably possible in favor of plaintiffs to the end that 'discrimination should not play a role in employment decisions', we agree with the dissent that the plaintiff should prevail in an action under the NYCHRL if he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision.") (cleaned up).

<u>Prima Facie Case</u>

As this Court held in its previous decision, Plaintiff easily meets the first two factors of her prima facie case. (*See* Memorandum and Order, ECF No. 59 at 21.) Plaintiff is a member of a protected class due to her age, and Plaintiff's resume shows that she has years of project management experience to qualify her for the position. (*Id*.); N.Y.C. Admin. Code § 8–107(1)(a); (Plaintiff's CV, ECF No. 57, Ex. 4). Since an adverse employment action need not be material under the NYCHRL, Plaintiff has also fulfilled the

8

third element by showing that she was required to participate in additional tasks that no other project manager was required to complete. (ECF No. 57-3, Ex. 5 ("McCarthy Dep.") 132:21–133:19). Even under the NYCHRL's broader standard, however, Plaintiff's discrimination claim falls short of showing that any adverse employment action was motivated, even in part, by discrimination.

First, Plaintiff has failed to connect Defendant Thompson's conduct to discriminatory intent. Plaintiff conceded that Thompson made no direct comments about her age. (McCarthy Dep. 131:4–132:7). Plaintiff has not submitted any evidence of Thompson showing animus towards older employees in writing. Plaintiff has also not shown that Thompson had a pattern of treating young or younger project managers with unmerited favor. *But see e.g., Stinson v. Morningstar Credit Ratings, LLC*, 1:22-cv-06164 (JLR), 2024 WL 3848515, at *22 (S.D.N.Y. Aug. 16, 2024) (denying summary judgment as to the plaintiff's NYCHRL age discrimination claim based on adverse employment actions in 2017 and 2018 because the plaintiff provided admissible evidence of a supervisor dismissing a job candidate as "too old" and of that same supervisor excluding the plaintiff and another older colleague from a team dinner); *Verne v. N.Y.C. Dep't of Educ.*, 697 F. Supp. 3d 30, 47–51, 59–61 (S.D.N.Y. 2023) (denying the defendant's motion for summary judgment against plaintiff's ADEA discrimination claim and NYCHRL age discrimination and hostile work environment claims because a triable issue of fact remained based on the plaintiff's deposition testimony that the defendant principal gave several senior teachers negative reviews and disciplinary charges and replaced senior teachers with new teachers and an email from the plaintiff's union representative stating that defendants gave the plaintiff an "unachievable" Teacher Improvement Plan.).

9

Rather, Plaintiff asks the Court to adopt her own subjective belief about why Thompson asked her to complete additional tasks and made rude, demeaning comments to Plaintiff, such as Plaintiff being unable to "fit in" at the Motorola Solutions, Inc. ("MSI") Brooklyn office. (McCarthy Dep. 126:6–12.) Plaintiff specifically asks the Court to infer discriminatory intent from Thompson's alleged "surprised face" after looking at Plaintiff's passport. (*Id*. 126:13–128:17.) A passport, however, contains many pieces of information. Without more, the Court cannot assume that Thompson's "surprised face" was due to seeing Plaintiff's age. Indeed, Plaintiff herself did not see Thompson read her passport. (*Id*. 132:13–20.) So too with Thompson's comment about "fit[ting] in." Without more, such a comment does not cross the line from Thompson being "obnoxious and overbearing" to being discriminatory. Though Plaintiff proffers a conclusory argument in her motion that Thompson made the comment because of her age, (ECF No. 57 ("Pl.'s Mem. of Law") at 2), Plaintiff's deposition testimony reveals that she subjectively believed—or had an "impression"—that Plaintiff made the comment because of animus towards her age but did not have any actual written or verbal statements from Thompson to show actual discriminatory animus underlying Thompson's actions. (McCarthy Dep. 126:6–128:17, 131:4–132:4.) The Court therefore lacks sufficient admissible evidence to connect Thompson's conduct to a discriminatory motive.

Second, Plaintiff has also failed to show that Diana Gallego's conduct was discriminatory. As with Thompson, Plaintiff asks the Court to adopt her own subjective belief that Gallego's actions were based on discriminatory motives without providing evidence of any comments, writings, or differential treatment showing explicit or implicit animus towards older employees. Plaintiff asserts that Gallego must have treated Plaintiff

10

badly because Gallego was close to Thompson. (McCarthy Dep. 268:17–271:19.) Indeed, other employees referred to Gallego as Thompson's "Queen Bee." (McCarthy Dep. 116:17–20, 208:5–15.) Still, the Court cannot infer discriminatory animus to Gallego based on her association with Thompson whose own alleged discriminatory intent is based off his alleged reaction to reading Plaintiff's passport. In fact, the evidence paints the picture of Thompson and Gallego as running a workplace where they could haze new employees, regardless of age, with impunity. (*See* McCarthy Dep. 269:20–271:19; ECF No. 57-3, Ex. 30 ("MSI HR Report") at 8–9.) Yet Thompson and Gallego were wrong, leading to the final reason that Plaintiff fails to satisfy the fourth element of her prima facie case.

Third, MSI acted to stop Thompson and Gallego's bad behavior after conducting an investigation spurred by Plaintiff's complaints. MSI disciplined Gallego and transferred her out of the Brooklyn office. (ECF No. 56-2, Ex. D ("Marks Dep.") 74:8–78:17; ECF No. 57-3, Ex. 14 ("Gallego Dep.") 113:9–22.) Thompson had to undergo additional coaching and speak with his supervisor, Miraj Oza, for at least an hour. (Marks Dep. 90:7–13; ECF No. 57-3, Ex. 12 ("Thompson Dep.") 195:10–13.) The Court therefore finds that Plaintiff cannot make a prima facie case of discrimination under the NYCHRL against MSI or Thompson despite the minimal burden at this stage and grants Defendants' motion for summary judgment as to Count III.

Retaliation

The New York City Council, through the NYCHRL, also prohibits employers from retaliating against employees who engage in protected activities, such as reporting discrimination to their employer's HR Department. N.Y.C. Admin. Code § 8–107(7); *see*

11

*Murray v. United Parcels Serv., Inc.*, 20-CV-1427 (MKB), 2022 WL 4468295 at *17 (E.D.N.Y. Sept. 25, 2022) (collecting cases holding that a formal or informal company complaint is a protected activity); *Sharpe v. Utica Mut. Ins. Co.*, 756 F.Supp.2d 230, 239 (N.D.N.Y. 2010) ("Internal or informal complaints of discrimination on a basis prohibited by Title VII are protected activity.") (citing *Amin v. Akzo Nobel Chems., Inc.*, 202 F.App'x. 958, 961 (2d Cir. 2008) (summary order) and *Raniola v. Bratton*, 243 F.3d 610, 624–25 (2d Cir. 2001)). As with discrimination claims, a plaintiff alleging a retaliation claim must first make a prima facie case to shift the burden to the employer. *See Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 171 (S.D.N.Y. 2011) ("for both discrimination and retaliation claims under the NYCHRL, courts continue to apply the three-step, burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*. The difference is that within that framework, courts must address the NYCHRL's 'uniquely broad and remedial purposes, which go beyond those of counterpoint State or federal civil rights laws.") (quoting *Williams*, 872 N.Y.S.2d at 31).

To do so, the plaintiff must show that (1) she engaged in a protected activity by opposing prohibited conduct; (2) the defendant was aware of that protected activity; (3) the defendant then engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct. *Bilitch*, 194 A.D.3d at 1004 (quoting *Sanderson-Burgess v. City of New York*, 173 A.D.3d 1233, 1235–36, 102 N.Y.S.3d 678 (2d Dep't 2019)); *Ya-Chen Chen*, 805 F.3d at 75–76; *Mihalik*, 715 F.3d at 112 (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011) and *Williams*, 872 N.Y.S.2d at 33–34). The plaintiff's burden at this step is again

"minimal and *de minimis*." *Adams*, 662 F. Supp. 3d at 461 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013)).

If the plaintiff makes a prima facie case, then the burden shifts to the employer to proffer evidence showing a "legitimate, nonretaliatory" reason for the challenged action. *Bilitch*, 194 A.D.3d at 1004. If the defendant does so, then the plaintiff "must either counter the defendant's evidence by producing evidence that the reasons put forth by the defendant were merely a pretext, or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive." *Id*. at 1005 (quoting *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 741, 970 N.Y.S.2d 789 (2d Dep't 2013) and *Reichman v. City of New York*, 179 A.D.3d 1115, 1120, 117 N.Y.S.3d 280 (2d Dep't 2020)).

<u>Prima Facie Case</u>

Though the Court has found that Defendants did not engage in discrimination, Plaintiff still meets the first element of a prima facie retaliation claim under the NYCHRL. Plaintiff reported to senior management what she believed to be discriminatory conduct. (ECF No. 57-3, Ex. 27 ("HR Complaint Email").); *see Amin*, 282 F.App'x at 961 ("such complaints are protected activity 'even when the underlying conduct complained of *was not in fact unlawful* so long as the plaintiff can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.") (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)) (cleaned up). Plaintiff easily meets the second element as well, because MSI acknowledged her complaints and initiated investigations. (ECF No. 56-2, Ex. E ("Roby Dep.") 146:22–149:19; MSI HR Report at 8–9.) Plaintiff cannot, however, satisfy the third and fourth

13

elements of a prima facie retaliation claim. MSI responded by investigating and then disciplining Gallego and Thompson. (MSI HR Report 8–9; Marks Dep. 74:8–78:17, 90:7–13.) Plaintiff claims that her transfer to the Maryland office was in retaliation to her complaint. (Pl. Mem. of Law at 16–17.) The record contradicts Plaintiff's assertion. A contractor, who was a former MSI employee, attempting to provide helpful advice, told Plaintiff that she should request a transfer to avoid being fired by Thompson. (McCarthy Dep. 163:19–164:22.) After speaking with that contractor, Plaintiff followed through on his advice and on February 15, 2020, informed senior management that she would be willing to transfer to the Virginia/Maryland area since her daughter and grandson lived in that area. (ECF No. 57-3, Ex. 37, McCarthy Email to Oza.) MSI transferred Plaintiff soon after in the first week of March 2020. (McCarthy Dep. 325:5–8; Defs.' 56.1 ¶ 84; Pl.'s 56.1 ¶ 84.) The Court therefore cannot find that MSI transferred Plaintiff in retaliation for her complaints. Plaintiff also stated that she had no other interactions with Thompson after he was disciplined by MSI. (McCarthy Dep. 162:20–164:16.) The Court therefore lacks sufficient evidence to find that Plaintiff has met her burden to make a prima facie retaliation claim against either MSI or Thompson. The Court grants Defendants' summary judgment motion on Count IV.

## **CONCLUSION**

For the reasons set forth above, the Defendants motion for summary judgment is granted. All claims against Defendants have therefore been dismissed. The Clerk of the Court is respectfully directed to enter judgment in the Defendants' favor and close the case.


SO ORDERED.

      /s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: August 28, 2025
          Brooklyn, NY

15